MRS. E. F. WEEKS v. THE WESTERN UNION TELEGRAPH COMPANY.

(Filed 27 October, 1915.)

1. Corporations—Torts—Contracts—Injured Party—Diminution of Damages.

In an action to recover damages for the negligent breach of a duty of a *quasi* public-service corporation it is necessary that the injury complained of shall have been the proximate cause of the negligence alleged; and where a contract of this character, relating to a public duty, has been broken by such corporations or tort committed by it, it is incumbent upon the injured party to do what he could to reduce or lessen the damage, and such damages as are reasonably incident to his own default in this respect will ordinarily be considered too remote for recovery.

2. Same—Telegraphs—Telegrams—Delay in Delivery.

In an action to recover damages of a telegraph company for the alleged negligent delay in the delivery of a telegram, whereby the plaintiff, the addressee of the message, was prevented from attending the funeral of her sister-in-law, there was evidence in the defendant's behalf tending to show that the plaintiff could have taken a later train or have hired an automobile at the cost of $10 and have reached her destination in time

to have avoided the injury; and in plaintiff's behalf, that she could not have made the necessary preparations in time to have taken that train, or have obtained the money from her husband necessary for her to have done so; and that she could not have afforded to have hired an automobile. *Held*, the question was properly submitted to the jury as to whether the defendant's negligence was the proximate cause of the injury, and whether the plaintiff had done what she reasonably could to have avoided the injury or minimize her damages.

**3. Telegraphs—Relationship—Affection—Evidence—Declarations.**

In an action to recover damages for mental anguish caused by the failure of the defendant telegraph company to promptly deliver a death message to the plaintiff, the sister-in-law of the deceased, evidence of the state of feelings having existed between the plaintiff and deceased are directly relevant to the issue; and both the conduct of the parties towards each other and their conversations and declarations about the other are usually admissible, the limitation being that they should have been at a time and under circumstances to exclude any reasonable suspicion of their sincerity.

**4. Same—Corroboration.**

Where the plaintiff sues a telegraph company for damages for mental anguish for its alleged negligent delay in delivering a telegram announcing the death of a sister-in-law, and evidence has been introduced which tends to show the close regard and affectionate feeling that had existed between them, testimony of the husband of the deceased as to this state of feeling, and that his wife desired his sister to have their little boy in case she died, was competent, either as direct evidence or in corroboration of the evidence of affection having existed between the deceased and her sister-in-law.

**5. Appeal and Error—Objections and Exceptions—Evidence Partly Competent.**

Where the evidence objected to as a whole is competent in part, the objection will not be sustained, though a part thereof is incompetent.

APPEAL by defendant from *Daniels, J.*, at the Fall Term, 1915, of WAKE.

Civil action to recover damages for negligent failure to deliver a telegraphic message sent from Durham, N. C., to plaintiff at Raleigh, and by reason of which plaintiff was prevented from being present at the funeral of her sister-in-law, Mrs. W. D. Pool. The message was sent from Durham, N. C., on the afternoon or evening of 20 October, 1913, at 7 p. m., addressed to plaintiff at Raleigh, No. 7 Johnson Street, in terms as follows: "Minnie died at 5:45 p. m. W. D. Pool."

The evidence on part of plaintiff tended to show that the message was not delivered till shortly before noon on the 21st, and, by reason of delay, plaintiff was prevented from attending her sister-in-law's funeral, which took place at Durham at 3 p. m. of the 21st; that the relationship between plaintiff and her sister-in-law had been one of cordial interest and affection. Speaking to this question, plaintiff testified that: "Mrs. Pool was my sister-in-law, and I loved her as truly as my own sister. I had boarded with her, and during the time I lived in Durham we visited each other very often, and after I moved from Durham I visited her as

often as I could and she visited me, and I was awfully sorry I could not attend her funeral. If I had gotten it in time, I would have gone that morning on the train." Defendants contended that the message was delivered about 9:50 a. m. of the 21st, and contended, further, and offered evidence tending to show that, whether same was received at 9:50 or at noon, plaintiff had ample time to have gone to funeral by taking train that left Raleigh on that day at 12:50, regular schedule 12:30.

Defendant offered evidence tending to show, also, that plaintiff might have gone to Durham in time by automobile, and proved same were available on that day at a cost of $10.

Plaintiff offered testimony in rebuttal tending to show that she could not, by any reasonable effort, have taken the train designated, and that she had no money with which to hire an automobile, etc.

The court charged the jury, and the following verdict was rendered:

1. Was the defendant guilty of negligent delay in the transmission or delivery of the message, as alleged in the complaint? Answer: "Yes."

2. If the message had been transmitted and delivered in a reasonable time, would the plaintiff have attended her sister-in-law's funeral. Answer: "Yes."

3. What amount of damages, if any, is the plaintiff entitled to recover? Answer: "$450."

Judgment on the verdict, and defendant excepted and appealed.

*Douglass & Douglass for plaintiff.*
*Pace & Boushall for defendant.*

HOKE, J. There was ample evidence to support the verdict of negligent delay in delivery of the message. This was not seriously questioned on the argument, the right of recovery being resisted chiefly on the ground that plaintiff, by making proper effort, could have taken the train which left Raleigh on that day at 12:50 (the schedule time seems to have been at 12:30), and would have arrived in Durham at or about 1:30, which would have given plaintiff full time to have been present at the funeral, and that, on the facts in evidence, no recovery for mental anguish should have been allowed. It is undoubtedly the general rule, in these cases as in other actions of negligence, that in order to a valid recovery the negligence complained of should have been the proximate cause of the injury, and they are subject, also, to another well recognized principle, that when a contract has been broken or tort committed it is incumbent upon the injured party to do what he can to reduce or lessen the damage, and that such damages as are reasonably incident to his own default in this respect will ordinarily be considered too remote for recovery. *Hocutt v. Telegraph Co.,* 147 N. C., p. 186; *Bowen v. King,* 146 N. C., p. 385; *Tillinghast v. Cotton Mills,* 143 N. C., p. 268; *Rail-*

*road v. Hardware Co.*, 143 N. C., p. 54; *Kernodle v. Telegraph Co.*, 141 N. C., p. 436. But, considering the case in reference to both these positions, we are of opinion that defendant's position cannot be sustained. Speaking to this question of her ability to get to the funeral notwithstanding the negligent delay, plaintiff testified, in part, that she lived at Johnson Street in the city of Raleigh, one-half to three-fourths of a mile from the Union Station; that her husband was a barber whose shop was somewhere near; that she received the message shortly before noon, and at that time she had no money, and could not obtain any till she saw her husband; that he was not in his shop at the time, but was downtown somewhere, and she could not see him until he came home at the dinner hour, which was usually 12:30, and, further, that she had to make some purchases, a pair of shoes, before she could have gone; that she had no time to have taken this train at 12:50, even if she had known of it, and that she did not go on the 4 p. m. train, as that would have been too late. She further testified that she was unable to pay $10, the price then required for an automobile to Durham. On this statement and other relevant testimony, we think his Honor made correct decision in referring the question to the jury to determine whether plaintiff, under all the facts as they existed, could by reasonable effort by train or automobile have gotten to Durham in time to have attended the funeral. Certainly there was nothing in the ruling that gave defendant any just ground for complaint. *Smith v. Telegraph Co.*, 167 N. C., p. 248; *Bailey v. Telegraph Co.*, 150 N. C., p. 316. It was further urged for error that the court admitted testimony from the witness W. D. Pool to the effect that his wife, the deceased, wished the plaintiff to have their little boy in case she died. The entire statement on this point, questions and answers, are as follows:

Q. State whether or not you ever heard any expressions of affection between your wife and Mrs. Weeks? (Objection by defendant; objection overruled; defendant excepts. Exception No. 1.) A. Yes, they were—they thought lots of each other, and very often spoke of each other when they were away from each other. My wife wanted my sister to have my little boy if she died; if she died, if she was to die, she wanted my sister to have her little boy. (Objection by defendant to the foregoing answer; objection overruled; exception.)

The ruling of the court here might very well be upheld on the principle that when a part of the witness's answer is relevant and competent, a general objection thereto will not be sustained, though a part of the answer may be improper. *Ricks v. Woodard*, 159 N. C., p. 647; *Smathers v. Hotel Co.*, 167 N. C., p. 469; *S. v. Ledford*, 133 N. C., p. 714. But apart from this, where the state of feeling between two parties is a fact directly relevant to the issue, both the conduct of the parties

45—169

toward each other and their conversations and declarations of one about the other are usually admissible, "the limitation being that they should be at a time and under circumstances to exclude any reasonable suspicion of their sincerity." *Luckey v. Telegraph Co.,* 151 N. C., pp. 551-553; *S. v. Draughon,* 151 N. C., pp. 667-670. In the present case the evidence was ample to show that these two relatives lived on terms of intimacy and affection with each other. On the record, it could not be seriously controverted. In the answer of the husband, containing the alleged objectionable utterances, he says: "They thought lots of each other"; and even if the declarations of Mrs. Pool, the deceased, not in the presence of plaintiff, was inadmissible as direct evidence, it could well be received in corroboration, and very certainly should not be held for reversible error.

We find no error in the proceedings and, on the record, the judgment in plaintiff's favor must be affirmed.

No error.